UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CHAPIN HOME FOR THE AGING,

        Plaintiff,                             **MEMORANDUM AND ORDER**

-against-                                     Case No. 11-CV-00667(FB)(RER)

CHARYLL MCKIMM a/k/a CHERYLL
CLAIBORNE, LLOYD RENARD CLAIBORNE,
RENEE CLAIBORNE, DENISE CLAIBORNE,
LLOYD RENARD CLAIBORNE II, ASHLEY
SMITH, LINDA ELAM, DEBORAH LASHLEY, as
Executor of the ESTATE OF ALICE R. GREENE,
NATIONS HOLDING COMPANY, NATIONS
TITLE AGENCY, NATIONS TITLE AGENCY,
INC., NATIONS TITLE AGENCY OF KANSAS,
INC., NATIONS TITLE AGENCY OF MISSOURI,
INC., NATIONS OF NEW YORK, INC.,
NATIONS VALUATION SERVICES, INC.,
NATIONS SIGNATURE SERVICES, INC.,
NATIONS SIGNATURE CLOSERS, INC.,
NATIONS REO, INC., and FORECLOSURE
MANAGEMENT COMPANY,

        Defendants.
------------------------------------------------------------x

*Appearances*:
*For the Plaintiff*:
MICHAEL KORSINSKY, ESQ.
Korsinsky & Klein LLP
30 Broad Street, 15th Floor
New York, NY 10004

*For the Defendants*:
LOUIS A. HUBER, III, ESQ.
Schlee Huber McMullen & Krause, P.C.
4050 Pennsylvania, Suite 300
Kansas City, MO 64111
DOUGLAS J. BOHN, ESQ.
Cullen and Dykman, LLP
100 Quentin Roosevelt Blvd
Garden City, NY 11530

**BLOCK, Senior District Judge:**

        Plaintiff Chapin Home for the Aging ("Chapin") provided nursing home services to Alice Greene ("Greene") from August 11, 2006, until her death on February 21, 2008. When Greene passed away, she owed over $121,979.66 to Chapin. This lawsuit arises from her estate's inability to pay that bill.

Claiming that the estate's lack of assets is the result of a fraudulent mortgage, Chapin brings a claim against Nations Holding Company, Nations Title Agency, Inc., Nations Title Agency of Kansas, Inc., Nations Title Agency of Missouri, Inc., Nations of New York, Inc., Nations Valuation Services, Inc., Nations Signature Services, Inc., Nations Signature Closers, Inc., Nations REO, Inc., and Foreclosure Management Company (the "Nations defendants"), Cheryl McKimm, and Linda Elam (collectively, "defendants") under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. Chapin also asserts New York state law claims for fraud, negligence, conspiracy, vicarious liability, breach of contract, tortuous interference with contract, violations of the New York Debtor and Creditor law, and unjust enrichment/conversion.[1]

Defendants move to dismiss Chapin's RICO, fraud, negligence, conspiracy, and vicarious liability claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[2]  For the following reasons, defendants' motion to dismiss the RICO claim is granted. In addition, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state claims, which are dismissed without prejudice.

---

[1] In addition to these claims against the Nations defendants, McKimm, and Elam, Chapin has asserted state law claims breach of contract, tortuous interference with contract, violations of the New York Debtor and Creditor law, and unjust enrichment/ conversion against Lloyd Renard Claiborne, Renee Claiborne, Denise Claiborne, Lloyd Renard Claiborne II, Ashley Smith and Deborah Lashley.  Those individual defendants have not moved to dismiss the claims against them.

[2] Defendants have also moved to dismiss any claims against the nations defendants who are Kansas corporations under Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction.  Because the case can be decided on other grounds, the Court need not address this alternative argument.  *See In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 487 n.61 (S.D.N.Y. 2005) ("Because the Court concludes below that the complaint fails to state any claim against [defendant], it does not reach the personal jurisdiction defense.").

I

For the purposes of this motion, the Court must take as true all of the allegations of Chapin's third amended complaint, and must draw all inferences in their favor. *See Weixel v. Board of Educ.*, 287 F.3d 138, 145 (2d Cir. 2002). The following facts are presented accordingly.

Chapin is a nursing home located in Jamaica, New York. Chapin entered into a contract to provide nursing home services to Greene pursuant to an Admission Agreement dated August 10, 2006. McKimm, who is Greene's niece, signed the Admission Agreement as Greene's representative. Greene, who was then 90 years old and wheelchair-bound, was admitted as a resident of Chapin's facility the next day.

Also on August 10, 2006, a power of attorney ("POA") for Greene was executed, bearing Greene's signature and naming McKimm as attorney in fact. According to the document, Elam notarized the POA. The POA authorized McKimm to make contracts relating to Greene's home located in St. Albans, New York (the "property"), including mortgage loan applications. Chapin alleges that McKimm and Elam forged Greene's signature and the notarization, because the POA was executed and notarized in Kansas and Greene was almost certainly in New York on August 10, 2006.

On March 16, 2007, McKimm, as agent and fiduciary of Greene, secured a $260,000 mortgage loan on the property. The lender, Countrywide Federal Savings Bank ("Countrywide"), is not a party to this lawsuit. Although Greene owned 25 percent of the property, the mortgage loan was based upon an assumption that Greene owned 100 percent of the property. One or more of the Nations defendants participated in the mortgage

3

transaction by obtaining appraisal of the property, procuring title, and closing the transaction. Both McKimm and Elam were employees of one of the Nations defendants at the time of the mortgage transaction, although Chapin has not specified which one of the corporate entities employed them. McKimm executed the mortgage loan documents as Greene's attorney in fact, and Elam notarized the documents. The mortgage was notarized in New York state, although Elam is allegedly only licensed as a Notary Public in Kansas. The mortgage was recorded with the Register of the City of New York on February 5, 2009.

At the time Greene died, there was a balance due to Chapin of at least $121,979.66 for her care. This sum has not been paid because, Chapin alleges, Greene's estate has no assets with which to pay her creditors. A foreclosure action between Countrywide and Greene's estate is currently pending in New York State court.

## II

Chapin first asserts a claim under the civil RICO statute, 18 U.S.C. § 1964(c), alleging that defendants engaged in an enterprise with "the purpose of engaging in mortgage fraud by obtaining money through the use of false documents." Compl. ¶ 126.[3]

**A. Standards governing civil RICO**

To establish a civil RICO claim, plaintiff must show: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *Zavalidroga v. Cote*, 395 Fed. Appx. 737, 740-41 (2d Cir. 2010). In addition, "a plaintiff may sue under §

---

[3] "Compl." refers to Chapin's Third Amended Complaint, filed November 8, 2011.

1964(c) only if the alleged RICO violation was the proximate cause of the plaintiff's injury." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453, 457 (2006) (requiring "some direct relation between the injury asserted and the injurious conduct alleged.").

To plead a pattern of racketeering activity, a plaintiff must allege at least two related predicate acts of racketeering in a ten-year period that pose a threat of continuing criminal activity. *See* 18 U.S.C. § 1961(5). To satisfactorily demonstrate continuity, a "plaintiff in a RICO action must allege either an 'open-ended' pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a 'closed end' pattern of racketeering activity (i.e., past criminal conduct 'extending over a substantial period of time')." *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995).

An "enterprise" under RICO "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has defined a RICO enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct," which must be proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

The heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b) applies to civil RICO claims, and requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "In the RICO context, Rule 9(b) calls for the complaint to specify the statements it

claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) (internal quotation marks omitted). The plaintiffs must "allege facts that give rise to a strong inference of fraudulent intent." *Id.*

**B. Discussion**

Defendants contend that Chapin fails to state a RICO claim because (1) the facts do not demonstrate the existence of a RICO enterprise; (2) the facts do not show a pattern of racketeering activity; and (3) Chapin's injuries were not proximately caused by the alleged RICO violation. For the following reasons, Chapin has failed to "plead enough facts to state a claim to relief that is plausible on its face" and the RICO claim must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**1. Enterprise**

Chapin first argues that the "enterprise" in this case is an "association-in-fact of the Nations defendants (including McKimm) and Elam as well as other persons not involved with" Greene's property. Compl. ¶ 125. The "other persons" include Nations Holding Company affiliates implicated in other mortgage fraud and negligence lawsuits from throughout the United States, none of which have any relation to the events and people involved in this lawsuit. *See* Compl. ¶¶ 127, 145.

An "association-in-fact" enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. U.S.* 556

6

U.S. 938, 946 (2009). There is no apparent connection between the "other persons" and the defendants in this case. Chapin has not alleged any facts suggesting that defendants were even aware of the existence or activities of the Nations affiliates in other states, let alone that they shared a common fraudulent purpose. Accordingly, Chapin's "conclusory naming of a string of entities does not adequately allege an enterprise." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir. 2004).

Nor can Chapin establish an "enterprise" consisting solely of the Nations defendants, McKimm, and Elam, as affiliates and employees of Nations Holding Company. A "corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity." *Bennett v. U.S. Trust Co.*, 770 F.2d 308, 315 (2d Cir. 1985). "Plaintiffs cannot circumvent the distinctness requirement 'by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant.'" *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999) (quoting *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994)). "Thus, where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation." *Riverwoods Chappaqua Corp.*, 30 F.3d at 344; *see Singh v. Parnes*, 199 F. Supp.2d 152, 162 (S.D.N.Y. 2002) ("[O]ther than conclusory allegations, nothing in the complaint addresses the relationships among defendants in a manner that distinguishes between the 'enterprise' and the 'person' who conducted the affairs of the enterprise through a pattern of racketeering."). Accordingly, Chapin has not pled sufficient facts to support this element

of the RICO claim.

**2. Pattern of Racketeering Activity**

The absence of an enterprise, alone, would warrant dismissal of Chapin's RICO claim. Even if there were sufficient allegations for the enterprise element, however, the claim would still fail because Chapin has not adequately pled a pattern of racketeering activity.

Chapin contends that the requisite predicate acts occurred when the alleged association-in-fact "provided assistance in mortgage-fraud schemes throughout the United States" from 2004 on. Compl. ¶¶ 142, 143. In support of this claim, Chapin relies upon the various unrelated lawsuits against Nations affiliates across the United States.

As has already been discussed with respect to the enterprise element, Chapin does not allege any facts to show that the seven lawsuits described in the complaint are related to the events at issue in this case. *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 230 (1989) (predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."). These lawsuits are all isolated events, with no overlap in participants, victims, or other characteristics.

The complaint refers to wire and mail fraud predicate acts, but does not provide any detail on when those acts occurred or which members of the alleged enterprise participated in them. "Allegations of mail or wire fraud [made as part of a civil RICO claim] must be made with the particularity required by Federal Rule of Civil Procedure 9(b)." *City of N.Y. v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 446 (2d Cir. 2008); *see Mills v. Polar Molecular Corp.*, 12 F.2d 1170, 1176 (2d Cir. 1993) (noting that "allegations of predicate mail and wire

8

fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent."). Chapin's conclusory references do not satisfy the heightened pleading standards of Rule 9(b).

Nor can the allegedly fraudulent POA and mortgage transaction alone support a finding of a "pattern" of racketeering activity. These two acts do not satisfy open-ended continuity because there is no apparent threat of future wrongful conduct; the acts amount to a single scheme with a natural termination point: the securing of the loan. The Second Circuit has cautioned courts to "take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." *Schlaifer Nance &Co. v. Estate of Andy Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) (holding that RICO claims lacked continuity, despite alleged predicate acts spanning over three years, because "[t]he acts complained of ... [we]re subparts of the singular act, and not a 'pattern' of separate acts with an underlying purpose").

Even if these acts can be deemed "separate" for the purposes of RICO, when an alleged enterprise "primarily conducts a legitimate business,. . . no presumption of a continued threat arises. . . [and] there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008). There is no such allegation in this case. Nations Holding Company is a well-established business and there is no plausible allegation that mortgage fraud is a component of the way in which any of its affiliates conduct their business. Further, Chapin has not sufficiently alleged close-ended continuity because these acts occurred less than one year apart; the Second Circuit has generally held

9

that a period of less than two years does not constitute a "substantial period of time." *See id.* at 184 (the Second Circuit has "never held a period of less than two years to constitute a 'substantial period of time.'").

**3. Proximate cause**

Finally, even if Chapin had pled facts supporting both an enterprise and a pattern of racketeering activity, their RICO claim also fails because they cannot show that defendants' conduct proximately caused Chapin's injuries.

Chapin claims it was injured as a result of the alleged racketeering activity because "it was defrauded in believing that there were sufficient assets of Greene to pay for the care and services provided by Chapin." Compl. ¶ 151. Chapin does not allege any facts, however, that would establish it was directly defrauded by defendants or relied upon any misstatement. Instead, Chapin claims an injury that derives from the alleged fraud upon Greene's estate and Countrywide. "[P]roximate cause for RICO purposes requires some direct relation between the injury asserted and the injurious conduct alleged. A link that is too remote, purely contingent, or indirec[t] is insufficient." *Hemi Group LLC v. City of N.Y.*, 130 S. Ct. 983, 984-85 (2010). When considering a chain of events originating in a defendant's alleged wrongdoing, "[t]he general tendency of the law . . . is not to go beyond the first step." *Id.* Accordingly, Chapin's injury is too far removed from defendants' alleged wrongdoing and cannot support a RICO claim.

**III**

Subject matter jurisdiction in this case rested solely upon Chapin's RICO claim. Because that claim has been dismissed leaving only state law claims, the Court may on its own initiative decline to exercise supplemental jurisdiction over Chapin's remaining state

law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction"). The Court may decline to exercise supplemental jurisdiction over these state law claims even though some of the defendants have not moved to dismiss the claims against them. *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006) ("Although neither party has suggested that we lack . . . jurisdiction, we have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*.").

"It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Board of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006). In "the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine– judicial economy, convenience, fairness, and comity– will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988); *see Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("It would . . . be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction.").

Having determined that Chapin's sole federal claim, under RICO, should be dismissed, the Court also concludes that retaining jurisdiction over the remaining state law claims is unwarranted. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

11

## CONCLUSION

For the foregoing reasons, Chapin's RICO claim against defendants is dismissed. In addition, because the Court declines to exercise supplemental jurisdiction over Chapin's state law claims, those claims are dismissed without prejudice.

**SO ORDERED.**                                    /s/
                                                    _____
                                                    FREDERIC BLOCK
                                                    Senior United States District Judge

Brooklyn, New York
June 12, 2012